**In re KAYS et ux.**

No. 30858.

District Court, W. D. Washington, N. D. Dec. 17, 1930.

This is a petition to review the order of the referee setting aside to the bankrupt four lots, Lake Park addition to Seattle.

It is shown that he acquired the property for the purpose of making a home. He cleared part of the property, worked every Sunday and holidays, built a cabin, tent top, to live in, also a small storage house, and lived there for periods during 1927, 1928, and 1929. The property fronts 70 feet on Lake Washington and extends back 400 feet. He cultivated a garden on the lots during the entire productive season for his own use since he acquired the property; also had upon the property 60 holly trees, numerous berry bushes, two peach trees, and has 3,000 bulbs. He has a mail box upon the end of the property facing the highway where his mail is directed, except such as comes from his immediate family or friends to a special address where he resides. He has consulted with the state horticulturist as to the advisability of removing the holly trees and putting the land to other purposes, has planted some 60 or 70 additional holly trees, has consulted with a lumberman with relation to securing lumber to build a house, had floor plans drawn, and went with the lumberman to inspect another house which they thought might be suitable; likewise consulted with a number of persons about financing a new house with security upon the property; likewise endeavored to get a loan from what he understood to be a "special loan for soldiers," and was advised to see the Farm Loan Board, but was unable to make financial arrangements for the building of the house. In December, 1928, he consulted with a party about putting in a water system on the place. His intention was to move onto the place as soon as he could provide living quarters, and cultivate on the place holly trees and bulbs, and likewise raise chickens on the land, and geese and ducks.

The bankrupt was engaged in the business of buying an old house, repairing and furnishing it, and then selling it furnished, and to effectuate that purpose, lived in the house until sold. In this way he has purchased and sold some ten or fifteen different houses, living in the house from a few days to two or three months. For the last year he has been working for the Bon Marche as clerk. His wife was ill a year or such a matter ago with flu, which developed into pneumonia, and that required that she be specially cared for, and she is now an expectant mother, and until conditions improve the bankrupt is unable to make provision for living on the property, but has acquired it, and has intended, and does intend, to use it as a homestead. In addition to the homestead he claims exemption for household furniture, wearing apparel, keepsakes, wages $500, military uniform, and 1926 Chandler valued at $200, in lieu of other property, under section 561, Rem. Comp. Stat. of Washington.

Declaration for homestead was filed January 28, 1920, that "the premises were purchased * * * for a homestead, and that * * * he and his family intend to reside thereon. * * * "

Murphy & Kumm, of Seattle, Wash., for bankrupts.

Eggerman & Rosling, of Seattle, Wash., for trustee.

NETERER, District Judge (after stating the facts as above).

The homestead may be selected not to exceed $2,000 in value, but "must be actually intended and used for a home." Section 552, Rem. Comp. Stat. Declaration of homestead must be executed and acknowledged in the same manner as a grant of real estate is acknowledged, and filed for record. Section 558, supra. Declaration inter alia must contain a statement that the declarant is residing thereon, or has purchased the same for a homestead and intends to reside thereon, and claims the same as a homestead (section 559, supra), and must be recorded (section 560, supra). From and after the time declaration is filed for record, the premises thereon described constitute a homestead. Section 561, supra.

It is obvious from the examination of the bankrupt and his witnesses that he did purchase the land for the purpose of making a home—a permanent residence where he intended to reside—that he devoted all of his spare time, etc., in improving the property; that he did select a site for a house, secured floor plans, consulted the lumberman for lumber, and sought a loan from various parties and concerns for the purpose of financing the building; that he did construct on the place a cabin with a tent top, a place in which to live during the summer time, and has in that place some cots and two or three articles of furniture, and has cultivated a garden thereon for his own use during each summer; that the general improvements made upon the place since acquiring it are such as would contribute to the beneficence of a home and be useful as a homestead, and has lived upon the place during each year since acquiring the property, except at the time when his wife's health did not permit, and had his general mail de-

livered at the mail box upon this property. He had no other permanent place of abode. He was flitting from house to house, as he acquired, repaired, furnished, and sold them, remaining in each house from two or three days to two or three months until sold, living in twelve or fifteen houses within two years.

In view of the liberal construction of the homestead laws by the state Supreme Court and this court, and construing all of the provisions of the act together, the mere failure to consummate the purpose, while attempting in good faith to effectuate the beneficent object of the statute, should not defeat the legislative purpose. After an examination of the record, I think, in view of the continued activity of the bankrupt to carry forward the intent as to the use of this property, that the court cannot say that his failure to date should defeat his good faith and the purpose and intent of the statute in providing the exemption.

The order of the referee is approved.